# NORTHERN PACIFIC RAILWAY COMPANY v. S. S. AAS.

## (126 N. W. 1016.)

**Public Lands — Grant to Railroads — Right of Way.**

1. The grant of right of way over the public lands made to Northern Pacific Railroad Company by act of Congress passed July 2, 1864, chap. 217, 13 Stat. at L. 365, is a present, absolute grant subject to no conditions except those necessarily implied, such as that the road shall be constructed and used for the purposes designed. Upon such construction and its acceptance by the United States under the terms of the act, the Northern Pacific Railway Company became vested with title to a strip of land 400 feet wide for right of way purposes from the date of the act.

**Public Lands — Grant to Railroads — Right of Way — Rights of Settlers.**

2. All parties acquiring rights in the public lands crossed by the line of route adopted by the Northern Pacific Railroad Company initiated subsequent to July 2, 1864, the date of the passage and approval of the act, take the same subject to the right of way granted to the Northern Pacific Railroad Company by the terms of the act.

**Public Lands — Right of Way — Forfeiture — Right to Assert.**

3. A forfeiture resulting from the failure of the grantee to perform certain conditions required of it by the act of July 2, 1864, within the period limited by the terms of the act, cannot be asserted by a private party or by any party except the United States.

**Public Lands — Grant to Railroads — Right of Way — Performance of Conditions.**

4. The plaintiff having shown with reasonable certainty that its predecessor

---

Note.—For cases holding, in harmony with Northern P. R. Co. v. Aas, that no one but the grantor can raise the question of breach of condition in a grant of public lands, see Burlington & M. River R. Co. v. Mills County, 154 U. S. 568, and 19 L. ed. 565, 14 Sup. Ct. Rep. 1197; Schulenberg v. Harriman, 21 Wall. 44, 22 L. ed. 551; and United States v. Southern P. R. Co. 146 U. S. 570, 36 L. ed. 1091, 13 Sup. Ct. Rep. 152.

The general subject of public land grants to railroads is treated in a note in 28 L. ed. U. S. 794.

and grantor, Northern Pacific Railroad Company, had generally complied with the requirements of the act of July 2, 1864, in the construction and maintenance of a railroad and telegraph line as provided by the terms of the act, it is to be regarded as the owner for right of way purposes of a strip of land 200 feet wide on each side of the medium line of the line of route of said railroad over lands that at the date of the passage of the act were part of the public domain.

Opinion filed May 25, 1910.

Appeal from District Court, Stark County; *W. H. Winchester*, J.

Action by Northern Pacific Railway Company against S. S. Aas, to determine adverse claims to a right of way over certain lands in Stark County. Plaintiff had judgment and defendant appeals.

Judgment affirmed.

*M. A. Hildreth*, for appellant.

When a railroad company claims a right of way by congressional grant it must establish (1) that it has complied with the acts of Congress in every respect; (2) that it has filed its map of definite location; (3) that it has commenced the construction of its road within the terms of the grant; (4) that the land was thus segregated from the public domain of the United States; and (5) that no homestead or other possessory rights attached to the land prior to the railroad company's filing the map of definite location, commencing the construction of the road, and performing the conditions of the grant. Doughty v. Minneapolis, St. P. & S. Ste. M. R. Co. 15 N. D. 290, 107 N. W. 971; Washington & I. R. Co. v. Osborn, 160 U. S. 103, 40 L. ed. 356, 16 Sup. Ct. Rep. 219; Kansas P. R. Co v. Atchison, T. & S. F. R. Co. 112 U. S. 414, 28 L. ed. 794, 5 Sup. Ct. Rep. 208; United States v. McLaughlin, 127 U. S. 428, 32 L. ed. 213, 8 Sup. Ct. Rep. 1177; United States v. Missouri, K. & T. R. Co. 141 U. S. 358, 35 L. ed. 766, 12 Sup. Ct. Rep. 13; Northern P. R. Co. v. McCormick, 19 C. C. A. 165, 44 U. S. App. 396, 72 Fed. 736; Jamestown & N. R. Co. v. Jones, 7 N. D. 619, 76 N. W. 227; 177 U. S. 128, 44 L. ed. 699, 20 Sup. Ct. Rep. 568; Northern Lumber Co. v. O'Brien, 204 U. S. 192, 51 L. ed. 439, 27 Sup. Ct. Rep. 249; Red River & L. of W. R. Co. v. Sture, 32 Minn. 95, 20 N. W. 229; Lilienthal v. Southern California R. Co. 56 Fed. 701; Spokane Falls & N. R. Co. v. Ziegler, 9 C. C. A. 548, 15 U. S. App. 472,

61 Fed. 392; Larsen v. Oregon R. & Nav. Co. 19 Or. 240, 23 Pac. 974; Hamilton v. Spokane & P. R. Co. 3 Idaho, 164, 28 Pac. 408; Enoch v. Spokane Falls & N. R. Co. 6 Wash. 393, 33 Pac. 966; Chicago, K. & N. R. Co. v. Van Cleave, 52 Kan. 665, 33 Pac. 472; Reidt v. Spokane Falls & N. R. Co. 6 Wash. 623, 34 Pac. 150.

*Ball, Watson, Young & Lawrence* for respondent.

Filing of map is only required to determine the land grant. St. Joseph & D. C. R. Co. v. Baldwin, 103 U. S. 426, 26 L. ed. 578; Northern P. R. Co. v. Hasse, 197 U. S. 9, 49 L. ed. 642, 25 Sup. Ct. Rep. 305.

Individuals cannot assail the government's grant upon grantee's failure to comply with the terms of the grant. Government alone can act. Bybee v. Oregon & C. R. Co. 139 U. S. 663, 35 L. ed. 305, 11 Sup. Ct. Rep. 641, and cases cited; Schulenberg v. Harriman, 21 Wall. 44, 22 L. ed. 551.

Grant of right of way is effective from date of the act, July 4, 1864, Northern P. R. Co. v. Ely, 197 U. S. 1, 49 L. ed. 639, 25 Sup. Ct. Rep. 302; Northern P. R. Co. v. Hasse, 197 U. S. 9, 49 L. ed. 642, 25 Sup. Ct. Rep. 305; Northern P. R. Co. v. Smith, 171 U. S. 260, 43 L. ed. 157, 18 Sup. Ct. Rep. 794.

ELLSWORTH, J. The action in which this appeal is taken is one to determine adverse claims to the title of a railroad right of way 400 feet wide across two tracts of land in Stark county. The respondent, Northern Pacific Railway Company, claims title to this right of way as the legal successor of the Northern Pacific Railroad Company, under an act of Congress passed July 2, 1864, granting lands to aid in the construction of a railroad and telegraph line from Superior to Puget Sound. 13 Stat. at L. 365, chap. 217. The substance of the act so far as material to the facts of this case, is found in §§ 2, 3, 8, and 9. Section 2 enacts "that the right of way through the public lands be and the same is hereby granted to said 'Northern Pacific Railroad Company,' its successors and assigns, for the construction of a railroad and telegraph [line] as proposed; and the right, power, and authority is hereby given to said corporation to take from the public lands, adjacent

to the line of said road, material or earth, stone, timber, and so forth, for the construction thereof.  Said way is granted to said railroad to the extent of 200 feet in width on each side of said railroad where it may pass through the public domain," etc.  Section 3 of the act contains a further grant, for the purpose of aiding in the construction of this railroad, of every alternate section of public lands to the amount of twenty such sections per mile, on each side of such railroad line as the Northern Pacific Railroad Company may adopt, through any of the territories of the United States, to which "the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption, or other claims or rights at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the Commissioner of the General Land Office."  Section 8 provides that the company shall commence the work of construction of its railroad within two years after the approval of the act by the president, and shall complete not less than 50 miles per year after the second year, and the whole road by July 4th, 1876.  Section 9 requires as a prerequisite to all grants made under the act that the company accept the same under the condition that if any breach of the requirements of the act is made and continues for upward of one year, Congress may do all acts needful and necessary to a speedy completion of the road.

The contention of respondent is that, under and pursuant to this act and certain subsequent acts and joint resolutions of Congress relating to the same subject-matter, the Northern Pacific Railroad Company built and caused to be put into operation a continuous line of railroad and telegraph, extending from the waters of Lake Superior westwardly across the state of Minnesota and territory of Dakota, of the character and material specified in the act of Congress above referred to; that in the year 1881 it duly located, constructed, and placed in operation that part of its railroad extending over the lands in Stark county involved in this action; that long prior to the year 1881 the Northern Pacific Railroad Company made and filed with the Secretary of the Interior of the United States a map of definite location of its line of railroad over and across the land in question, which map of definite location was duly approved by the Secretary of the Interior; that at such times and at all times until after the completion of the line of railroad through the same and the placing of the lines of railroad and telegraph

in operation, the said land and all thereof was public land to which the United States had full title not reserved, sold, granted, or otherwise appropriated; and that by reason of said facts said respondent is the owner and entitled to full possession for railroad purposes of a strip of land 400 feet wide, to wit 200 feet on each side of the entire line of its railroad as the same is now and has been at all times since 1881 located, constructed, and in operation over and across the tracts of land involved.

The appellant, who was defendant in the district court, denies the facts which serve as the basis of plaintiff's claim of title, ownership, and right of possession. He specially denies that plaintiff complied with the provisions of the act of July 2, 1864, in that the lands claimed by plaintiff had been selected or definitely located or the selection approved as required by the terms and conditions of the act by the Secretary of the Interior of the United States at any time, so that the same became the land and property of Northern Pacific Railroad Company. He denies that plaintiff at any time filed a map of definite location as required by the provisions of the act covering any part or portion of said land and premises to which the plaintiff now claims to be entitled; and specifically denies that said line of railway was completed within the time prescribed by the act of Congress or in the mode and manner pointed out by said act and supplementary acts of Congress relating thereto. Both parties claim title in fee simple, and pray judgment that title to the strip of land in question be quieted against the claim of the other. The defendant's claim of title is based upon homestead entries made on part of the land by one Ellison, on July 8, 1884, and on another part by one Hughes, on May 22, 1885. Final proof was made under each of these entries, and patent issued to Ellison on September 6, 1890, and to Hughes on June 4, 1890, without mention of any reservation whether of any interest in the land to Northern Pacific Railroad Company or to any person other than the entryman.

On the trial plaintiff offered in evidence a certified copy of a map of definite location of the line of route of Northern Pacific Railroad Company from the Missouri river in Dakota territory to the crossing of the Little Missouri river, the line and right of way of which section of railroad crosses on its course to lands claimed by the defendant. It also introduced a deposition of its chief engineer, who testified that he was

employed in the Northern Pacific engineering department in 1880, and knew that the railroad was at that time constructed on the line and to the point shown upon the map, and that it had been maintained and operated in the same location ever since.    It also offered a certified copy of the report of the commissioners appointed under provisions of the act of July 2, 1864, to examine the section of railroad shown on the map, on which is noted an acceptance approved by the President of the United States.    Having offered this evidence, plaintiff rested its case, and defendant moved for a dismissal of its cause of action on the ground that "plaintiff has failed to establish a cause of action against the defendant in that the plaintiff has failed to show, first, that it is the owner in fee of the lands described in the complaint: second, that plaintiff has acquired title to the land described in the complaint by virtue of the act of Congress providing for a grant to Northern Pacific Railroad Company for the construction of a railroad,—in that it appears on the face of the evidence that the Northern Pacific Railroad Company did not comply with the general provisions of said act and especially with §§ 8 and 9 of said act in that, (1) it did not survey the lands for its projected line of railroad; (2) that said lands were not at any time surveyed by the government as provided for in said act; (3) that it did not definitely locate its line of railroad within the time prescribed in the act; (4) that there is a total failure of proof that it commenced the construction of its road within the time provided by the act; (5) that the evidence shows plaintiff did not have a road in operation on the 16th day of August, 1880, at the time the report was made by the commissioners appointed by the President; and (6) on the additional ground that it has failed to establish that the defendant is holding adversely to the right, title, interest, claim, or demand of the plaintiff to the lands in question, and has failed to establish that it had constructed and was operating a railroad pursuant to the terms of the act of July 2, 1864, across the lands involved in the suit.    This motion was not acted upon by the court, and defendants then submitted certain evidence showing the filings and final proof upon the lands in question by Ellison and Hughes respectively, and the conveyance of the same through several grantors until the title so acquired by Hughes and Ellison was vested in defendant.    The evidence then being closed, defendant renewed his motion to dismiss the action on the grounds before urged.    The district

court, however, rendered its decree holding that plaintiff was owner of the strip of land in controversy, for railroad right-of-way purposes, and quieting title thereto as against appellant's claims.

Upon this appeal, defendant contends that plaintiff has wholly failed to acquit itself of the burden assumed by its cause of action, upon the principle that the railroad company, claiming as it does under a grant made by act of Congress, must show affirmatively that it has complied with each and every condition of the act; and that, having failed to do this, it has wholly failed to establish its title to any part of the premises claimed by it.

It will be noted that the grant of right of way over the public lands and of certain lands adjoining the right of way to assist in the construction and maintenance of the railroad is made by separate and independent sections of the act of July 2, 1864. The grant of right of way is made by § 2 of the act, and is throughout by its terms absolute and of present operation. Certain limitations and reservations are placed upon the grant of lands made by § 3, but none of these reservations extend to the right of way. The lands were to be first selected contiguous to the line of route as shown by a map of definite location, and the selections approved by the Secretary of the Interior before the title passed to the railroad company. As from its nature and use the strip of land constituting the right of way must extend in an uninterrupted course between the termini of the road, it could not be selected in segments, or the railroad company indemnified by selections elsewhere for any break in the continuity of the line occasioned by the withholding of a part. It is apparent, therefore, as said by the Supreme Court of the United States in the case of Jamestown & N. R. Co. v. Jones, 177 U. S. 125, 44 L. ed. 698, 20 Sup. Ct. Rep. 568, that in this case and peculiarly under the terms of this act, "different considerations apply to the grant of lands than to the grant of the right of way."

The rights respectively of the parties to this action, depending as they do upon an act of Congress, are in all cases determined conclusively and finally by the holdings of the Supreme Court of the United States. That court has decided that under an act whose clause granting a railroad right of way is almost *verbatim* the same as that contained in this act, "that it is a present, absolute grant, subject to no conditions except these necessarily implied, such as that the road shall be constructed and

used for the purpose designed." The court then holds: "We are of the opinion, therefore, that all persons acquiring any portions of the public lands after the passage of the act in question took the same subject to the right of way conferred by it for the proposed road." St. Joseph & D. C. R. Co. v. Baldwin, 103 U. S. 426, 26 L. ed. 578. The principle announced in this decision applies with peculiar force to the facts of the case at bar. All contentions based upon a failure to survey the lands over which the right of way passed, or to file a map of definite location, become immaterial, as plaintiff was not required to do either in order to become entitled to the grant of right of way made by § 2. So far as this grant is concerned the conditions were fully met when the railroad was constructed and in use for the purposes named in the act. It is shown, we think, with sufficient certainty, that it was so constructed in the year 1880, four and five years before appellant's grantors made their homestead entries and acquired possessory rights in the public lands, and has been maintained in the same location since that time. Even had settlements under these entries been made. Prior to the construction of the road, it seems apparent from the rule announced in the Baldwin Case that any rights acquired by settlers on the public lands subsequent to July 2, 1864, were taken subject to the claim of the railroad company when it constructed its railroad under the terms of the act. In that case the settler who was claiming against the railroad company had made his entry two years before the construction of the road, but after the passage of the act containing the grant.

It appearing that plaintiff has succeeded to the rights of Northern Pacific Railroad Company which, pursuant to the terms of the act of July 2, 1864, constructed and maintained a line of railroad between the terminal points named in the act, it will be presumed that the conditions required of the company were performed within the times prescribed by the act itself or by amendatory or supplementary provisions. In any event a private party cannot raise the question of a failure of performance, within a limited time, of conditions required of the grantee under an act of Congress. Such question can be raised only by the United States; and until it sees fit to assert a forfeiture the rights of the grantee remain undisturbed. Bybee v. Oregon & C. R. Co. 139 U. S. 663, 35 L. ed. 305, 11 Sup. Ct. Rep. 641.

The act of July 2, 1864, is in certain of its terms and provisions very

different from the act of March 3, 1875, granting right of way over public lands to railroad companies generally. In the act of 1864 a specific grantee is named, and the grant of right of way, being present in terms and without limitation, takes effect immediately upon the passage and approval of the act. By the act of March 3, 1875, any railroad company may avail itself of a like grant upon compliance with certain conditions, one of which is its identification as grantee, the other a definite location of its line of route; or, in other words, fixity of grantee must concur with fixity of location before the grant becomes operative. It was held in the case of Jamestown & N. R. Co. v. Jones, supra, that the first condition having been complied with, the second might be attained by actual construction and operation of the railroad. Under all construction of the act of 1875, however, it is held that both of these conditions must be complied with in one way or the other before the grant takes effect. There being no such limitation imposed upon the railroad company by the act of July 2, 1864, it is apparent that construction of this act is much more simple, and that the cases passing upon the requirements of the act of 1875 have little or no application to rights claimed under this act.

The evidence introduced by plaintiff, while vague in some particulars, shows with reasonable certainty that its predecessor and grantor has generally complied with the requirements of the act of 1864, by constructing a line of railroad from a point on Lake Superior to a place beyond that at which it crossed the lands owned by appellant. This, as we view it, is sufficient as against any claim that may be asserted by appellant to bring into operation the terms of the grant and vest title to the right of way to that point in plaintiff. Being the owner for right-of-way purposes of the strip in question, it is entitled to have its title quieted as decreed by the district court.

The judgment of the District Court is accordingly affirmed. All concur.